SO ORDERED.

Dated: February 29, 2016

Daniel P. Collins, Chief Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 13 Proceedings |
| Jeffrey Allen Cohen | Case No: 2:14-bk-11079-DPC |
| Debtor. | **UNDER ADVISEMENT RULING ON TRUSTEE'S MOTION TO QUASH AZDOR LEVY** |
| | **[NOT FOR PUBLICATION]** |

Subsequent to dismissal of this chapter 13 case, the Arizona Department of Revenue ("AZDOR") issued a levy against the Chapter 13 Trustee, Edward J. Maney ("Trustee"), seeking payment from the Trustee of $4,718.85 to AZDOR from the funds paid to the Trustee during the course of Jeffrey Allen Cohen's ("Debtor") chapter 13 case. The Trustee filed a motion ("Motion") to quash the AZDOR levy, contending § 1326(a)(2)[1] requires the Trustee to pay such funds only to the Debtor.

For the reasons stated below, the Court denies the Trustee's Motion and directs the Trustee to pay the sum of $4,718.85 from the funds held by the Trustee at the time this chapter 13 case was dismissed.

**I.    Background**

Debtor filed for bankruptcy under chapter 13 of the United States Bankruptcy Code (the "Code") at case no. 2:13-bk-17248-GBN, on October 2, 2013. The Court dismissed that case on February 7, 2014. On July 18, 2014, Debtor filed the case at bar. The Court dismissed this case on February 17, 2016. On February 25, 2015, the Court

---

[1] All section references refer to the Code, Title 11 of the United States Code, unless noted otherwise.

granted Debtor's Motion to reinstate his chapter 13 bankruptcy case (DE 69).[2]  On the same date, Debtor filed an Amended Chapter 13 Plan and Application for Payment of Administrative Expenses (DE 73).  On May 27, 2015, the Court dismissed this case, prior to confirming a plan, for Debtor's failure to fully comply with the Trustee's recommendations and for delinquent plan payments in the amount of $1,600 (DE 88).

Between February 25, 2015 and the date of the dismissal order, Debtor made plan payments to the Trustee totaling $10,099.15.  On June 4, 2015, one week after the Court dismissed the case, AZDOR issued a levy pursuant to state law seeking $4,718.85,[3] for a priority secured tax lien, from the funds held by Trustee.  On December 30, 2015, the Trustee filed a Motion to Quash the Levy claiming 11 U.S.C. § 1326(a)(2) prohibited the Trustee from releasing funds held by the Trustee to any party but Debtor (DE 92).

**II.    Issue**

The issue before this Court is whether funds held by the chapter 13 Trustee after dismissal of the case, prior to confirmation of Debtor's chapter 13 plan, are subject to a levy by AZDOR pursuant to state law or must the funds instead be returned only to Debtor?

**III.   Law**

A.    Applicable Bankruptcy Statute.

11 U.S.C. § 1326(a)(2) states as follows:

A payment made under paragraph (1)(A) shall be retained by the trustee until confirmation or denial of confirmation.  If a plan is confirmed, the trustee shall distribute any such payment in accordance with the plan as soon as is practicable.  *If a plan is not confirmed, the trustee shall return any such payments not previously paid and not yet due and owing to creditors pursuant to paragraph (3) to the debtor, after deducting any unpaid claim allowed under section 503(b).*  (emphasis added).

---

[2] All docket entries refer to the docket number in the administrative case, 2:14-bk-11079-DPC.
[3] AZDOR also asserts a general unsecured claim in the amount of $602.43, but there is nothing in the record to suggest AZDOR's levy includes this amount.

B. Arizona Revised Statutes.

Under Arizona law, any unpaid amount owed by a taxpayer to the State gives rise to a lien against all of that taxpayer's property. A.R.S § 42-1151. A.R.S. § 42-1202 further states, in relevant part:

> . . . any person in possession of, or obligated with respect to, property or rights to property subject to levy upon which a levy has been made shall, upon demand of the department, surrender such property or rights to property or discharge such obligation to the department, except such part of the property or rights to property as is, at the time of such demand, subject to an attachment or execution under any judicial process.

C. Bankruptcy Case Law.

If a statute is unambiguous, courts must apply the statute as stated. *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 254, 112 S. Ct. 1146, 1149, 117 L. Ed. 2d 391 (1992). Where a statute's language is ambiguous, courts are to scrutinize it in its entirety and consider "the objects and policy of the law, as indicated by its various provisions, and give to it such a construction as will carry into execution the intention of the Legislature." *Kokoszka v. Belford*, 417 U.S. 642, 650, 94 S. Ct. 2431 (1974). Courts are divided on the effect of a levy served under state law on a chapter 13 trustee after dismissal of the chapter 13 case when the trustee possesses debtor's pre-confirmation plan payments. Courts holding that the funds are subject to levy or garnishment[4] under state law largely base their decisions on the termination of the bankruptcy estate upon dismissal and simultaneous lifting of the automatic stay, leaving unprotected the funds held by the trustee. *See, e.g.*, *Massachusetts v. Pappalardo (In re Steenstra)*, 307 B.R.732, 740 (1st. Cir. B.A.P. 2004); *In re Doherty*, 229 B.R. 461, 466 (Bankr. E.D. Wash.1999).

Other courts find that the language in § 1326(a)(2) is an unambiguous directive requiring the chapter 13 trustee to turn over the funds to *only* the debtor. These courts

---

[4] Although this case deals with a levy order and much of the case law deals with garnishment, there is no material difference between the two for the purposes of this Court's ruling.

hold that the Code preempts any state law which conflicts with § 1326(a)(2)'s "mandate". *In re Bailey*, 330 B.R. 775, 776 (Bankr. D. Or. 2005); *In re Davis*, 2004 Bankr. LEXIS 1197, 2004 WL 3310531, *2 (Bankr. M.D. Ala. 2004); *In re Oliver*, 222 B.R. 272, 275 (Bankr. E.D. Va.1998); *In re Walter*, 199 B.R. 390, 392 (Bankr. C. D. Ill.1996).

Both parties cite *In re Beam,* 192 F.3d 941 (9th Cir. 1999) in their pleadings. In that case, the Internal Revenue Service ("IRS") served a notice of levy on the trustee after dismissal of a chapter 13 case with no confirmed plan. *Id.* at 944–45. The Ninth Circuit held that the IRS levy properly attached to the funds despite § 1326(a)(2). *Id.* The Court's analysis suggests a possible preemption issue in a case with a levy order pursuant to a state law. However, the *Beam* court never discussed whether 26 U.S.C. § 6331 of the Internal Revenue Code and 11 U.S.C. § 1326 of the Bankruptcy Code actually conflict nor did it exclude the possibility of co-existence. *Id.* Therefore, *Beam* does not control the issue in this case.

    D.    <u>The Supremacy Clause</u>.

Under the United States Constitution, federal law constitutes the supreme law, and in cases of conflict between federal and state law, the federal law must be applied under the preemption doctrine. U.S. Const. art. VI, cl. 2.

**IV.**     **Parties' Arguments**

    A.    <u>Trustee's Arguments</u>.

Trustee argues that when a statute is clear and unambiguous, the plain language of the statute must be followed. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S. Ct. 1026, 2031 (1989). Trustee maintains that the plain language of § 1326(a)(2) mandates a return of all funds held by Trustee to only the Debtor, regardless of any levy served on the Trustee after dismissal of Debtor's chapter 13 case but before disbursement of the Debtor's payments back to the Debtor. Accordingly, Trustee

contends that AZDOR's levy must give way to the Code under the Supremacy Clause and the preemption doctrine.

In addition, Trustee lists three policy reasons that favor interpreting § 1326(a)(2) as prohibiting garnishment or a levy order: (1) disallowing garnishment encourages debtors to re-file chapter 13 petitions; (2) returning the funds ensures orderly and efficient disposition of chapter 13 cases; and (3) citing *In re Bailey*, 330 B.R. at 777, parties will be returned to their positions prior to the bankruptcy filing.

B.   AZDOR's Arguments.

AZDOR argues the language of § 1326(a)(2) does not clearly or unambiguously direct Trustee to turn the subject funds over to only Debtor. AZDOR bases this argument on the fact that the language in § 1326(a)(2) does not preclude Trustee from satisfying other payment obligations pursuant to a levy order. Additionally, AZDOR reasons that strict adherence to the section's language would lead to absurd results.

AZDOR also argues that sections 349, 362(c), and 1326(a)(2) together lift the automatic stay, terminate the estate, and revest estate property back to Debtor, leaving the funds in Trustee's possession unprotected and subject to garnishment. *In re Doherty*, 229 B.R. at 466. Moreover, AZDOR disputes the notion that Congress sought to extend any protection to a debtor with no confirmed plan because there are no such protections available to a debtor with a confirmed plan after dismissal. *In re Boggs*, 137 B.R. 408, 410 (Bankr. W.D. Wash 1992).

AZDOR disagrees with Trustee's stated policy reasons. AZDOR argues that not allowing a levy to attach to the plan payments would unjustly reward debtors who neither pay creditors through a confirmed plan nor opt to pay them by converting to a chapter 7 case. *In re Shields*, 431 B.R. 446, 451 (Bankr. S.D. Ind. 2010). AZDOR also contends that recognizing a levy in this case does not pose an administrative burden on Trustee, and it disagrees that honoring a levy would delay closing the case or encourage a race

among creditors. *In re Martinez*, 13-12642-BKC-LMI, 2015 WL 4874940, at *4 (Bankr. S.D. Fla. July 22, 2015). Further, AZDOR argues that debtors would not be restored to pre-petition status but enriched for their efforts of not confirming or converting their case if these funds are not subject to a levy order.

Finally, AZDOR maintains that the levy is neither inconsistent with nor contrary to the purpose or objectives of § 1326(a)(2), and, therefore, the doctrine of preemption and the Supremacy Clause do not apply.

**V.     Analysis**

  A.     § 1326(a)(2) is Not Dispositive.

The Court finds that § 1326(a)(2) is not clear and unambiguous. A plain reading of § 1326(a)(2) would result in illogical outcomes in certain situations. For example, if read literally, § 1326(a)(2) requires a chapter 13 trustee to return plan payments after a denial of a confirmed plan, even if the debtor intends to file an amended plan. *In re Shields*, 431 B.R. at 450. Since this would produce an absurd result, courts generally interpret § 1326(a)(2) as applying to dismissed cases.[5] *Id.* Moreover, a strict reading of this section cannot provide for the disposition of funds in every dismissed case. *In re Shields*, 431 B.R. at 450. For example, if the debtor has been declared incompetent, then certainly the trustee would not be expected to return the funds to *only* the debtor but instead the funds should be paid over to the debtor's guardian. *Id.*

Furthermore, § 1326(a)(2) does not explicitly exclude the possibility of a levy order or garnishment attaching to those funds. *In re Fischer*, 432 B.R. 863, 865–66

---

[5] In *Harris v. Viegelahn*, the Supreme Court held that § 1326(a)(2) does not apply to converted cases post-confirmation. _____ U.S. _____, 135 S. Ct. 1829, 191 L. Ed. 2d 783 (2015). The Court explains that, upon conversion, chapter 13 principles no longer control. *Id.* Congress' decision to protect postposition wages from creditors in a ch. 7 case controls, not the directive in § 1326(a)(2). *Id.* at 1839; § 348(f)(1)(A). Some courts have understood *Harris* to mean that § 1326(a)(2) also does not apply to converted cases pre-confirmation. *In re Beauregard*, 533 B.R. 826 (Bankr. D. N.M. 2015). To the contrary, other courts have held that *Harris* does not apply to converted cases pre-confirmation. *In re Kirk*, 537 B.R. 856 (Bankr. N.D. Ohio 2015). At least two courts have held that *Harris* does not apply to dismissed cases. *Id.,* and *In re Brandon*, 537 B.R. 231 (Bankr. D. Md. 2015) and until *Harris*, courts generally interpreted this section as applying to either converted or dismissed cases. *Harris* does not speak to this issue in the case at bar.

(Bankr. M.D. Fla. 2010). By analogy, an employer's obligation to pay wages owed to an employee does not preclude a creditor from garnishing those wages. *Id.* Likewise, banks must turnover a depositor's funds, but a creditor may still properly garnish the funds on deposit. *See, e.g.*, *In re Vaughter*, BR13-41425, 2014 WL 806207, at *2 (Bankr. D. Neb. Feb. 28, 2014). Nothing in the Code suggests the Trustee, post dismissal, is any different than an employer or bank. Consequently, this Court finds the language of § 1326(a)(2) to be unclear in view of the facts at hand.

B. <u>Congress Did Not Intend for the Code to Extend Protection to These Funds</u>.

To understand the effect of § 1326(a)(2) on a debtor's plan payments, this section must be viewed in conjunction with other Code provisions. *Massachusetts v. Pappalardo (In re Steenstra)*, 307 B.R. at 740). The filing of a petition for relief establishes an estate encompassing all of the debtor's property and prompts an automatic stay on all acts against the debtor and his non-exempt property. §§ 541(a) and 362(a). The docketing of an order for dismissal terminates this automatic stay and dissolves the estate. § 362(c)(1); *In re Weston,* 101 B.R. 202, 204–205 (Bankr.E.D.Cal.1989), *aff'd* 123 B.R. 466 (9th Cir. B.A.P. 1991), *aff'd* 967 F.2d 596 (9th Cir. 1992). Upon dismissal, in the case of post-petition wages, § 349 of the Code states that the property "revests" in the party with prior rights. If the debtor's plan was not confirmed, § 1326(a)(2) directs the trustee to return these plan payments to the debtor.[6] If the debtor did confirm a plan, § 1326(a)(2) directs the trustee to make payments pursuant to that plan. The Code explicitly and deliberately provides protection for a Debtor's property but nowhere does it extend any protection to plan payments after dismissal, for either unconfirmed or confirmed plans. *See In re Steenstra,* 307 B.R. at 739–40 (finding that dismissal prior to confirmation removes any protection afforded by the Code). The Code grants debtors protections in specific terms, such as the automatic stay under § 362. *In re Shields*, 431 B.R. at 450. Had Congress

---

[6] Less any administrative claims under § 503(b).

intended to extend protection to these funds, it could have been unambiguously stated. *Id.* Simply inserting the word "only" before "the debtor" would have accomplished that end.[7]

### D. Policy Considerations Do Not Favor an Anti-Levy Interpretation.

The Trustee argues that returning plan payments to debtors would encourage chapter 13 filings by not penalizing debtors for a failed effort. The Court finds this argument unconvincing for it fails to explain why a debtor who did not confirm a plan is given greater consideration than one whose plan is confirmed. Additionally, this argument may encourage bad-faith filings solely motivated by the purpose of avoiding payment obligations. Hypothetically, a debtor could file bankruptcy, receive protection from garnishment against his wages, fail to confirm a plan, receive those funds back safely from the trustee, and then potentially spend those funds before a creditor could reinstate a wage garnishment after the case is dismissed. This would result in rewarding debtors who do not produce a viable plan, while not extending similar protections to debtors who made serious efforts toward repaying creditors.

Next, the Court finds unpersuasive the Trustee's argument that a levy order would impose administrative burdens on a trustee's office. Trustee's only concern is to whom the funds should be paid. Whether funds held by a trustee are paid to a creditor or the debtor makes no difference in carrying out this payment duty. *In re Shields*, 431 B.R. at 451. Additionally, under Arizona law, the Trustee will be entitled to a fee to abide by a writ of garnishment or a tax levy. Moreover, Trustee can return the funds to debtors immediately upon a case dismissal, avoiding a race to the trustee among creditors.[8]

---

[7] Similar to the language in § 1111(b) stating, "trustee shall only" and in § 342(c)(1) stating, "debtor shall only." Congress would have remained consistent in its language if it intended to require a return only to the debtor.

[8] Non-governmental entities will ordinarily need to seek a garnishment order through the judicial process, unlike in the present case involving a government entity issuing a levy order. Any creditor that acts promptly and successfully obtains a garnishment order before the trustee has returned the funds to the debtor will have earned the right to garnish such funds.

Trustee's argument that Debtor should be returned to his prepetition status greatly overlooks the protections chapter 13 provides debtors. By the time a chapter 13 case is dismissed, a debtor will have had the advantage of the bankruptcy automatic stay and their income will have been protected against garnishment and levies all the while. Absent the bankruptcy automatic stay, those funds likely would have been garnished or levied at an earlier time. Turning these funds over to Debtor does not serve to return him to his pre-petition status. Rather, it would put Debtor in an enhanced position.

E. No Preemption Issue Exists.

To the extent a state's statutes conflict with § 1326(a)(2), the state law must give way to the Bankruptcy Code. *See* Supremacy Clause of the U.S. Const., art. VI, cl. 2. No preemption issue exists in this case because the relevant Arizona statutes and the Code are not in conflict. They may be read in harmony. "When two statutes are capable of co-existence, it is the duty of courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551, 94 S. Ct. 2474 (1974). Trustee may both turnover the funds to AZDOR under the levy and turnover the remaining funds to Debtor pursuant to the Code. The Arizona statutes at issue and § 1326(a)(2) can co-exist, and so do not give rise to a preemption issue.

**VI. Conclusion**

For the reasons above, the Court denies Trustee's Motion and holds that § 1326(a)(2) does not prevent AZDOR's levy from attaching to funds in Trustee's possession at the time of AZDOR's post-dismissal levy. Trustee must turn over the $4,718.85 to AZDOR and return the remaining funds to Debtor.

**IT IS ORDERED** Denying Trustee's Motion to Quash the AZDOR Levy;

**IT IS FURTHER ORDERED** The Trustee shall satisfy the AZDOR levy from the funds held by the Trustee at the date of the post-dismissal levy.

**IT IS FURTHER ORDERED** The Trustee shall return to Debtor all funds remaining after satisfaction of the AZDOR Levy.

**Signed and Dated Above.**

COPY of the foregoing mailed by the BNC and/or sent by auto-generated mail to:

Christopher J. Dylla, Esq.
Assistant Attorney General
State Bar No. 027114
Office of the Attorney General
1275 West Washington Street

Andrew M. Dudley, Esq.
101 North First Avenue, Suite 1775
Phoenix, AZ 85003
Attorney for Edward J. Maney, Chapter 13 Trustee

Jeffrey Allen Cohen
4517 West Cross Water Way
Phoenix, AZ 85086
*Pro Se* Debtor